UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KEITH SOANES,

               Plaintiff,

v.                                  Case No. 3:23-cv-1278-MMH-MCR

M. MADDOX, et al.,

               Defendants.

_____

## ORDER

### I.    Status

Plaintiff Keith Soanes, an inmate in the Florida Department of Corrections (FDOC), initiated this case by filing a pro se Civil Rights Complaint (Doc. 1). He is proceeding on a verified Amended Complaint (Doc. 15; Amended Complaint) against Defendants Maddox, Price, and Goodman.[1] Soanes alleges Defendants violated his First and Fourteenth Amendment rights when they deleted his incoming and outgoing emails, along with his

---

[1] Soanes signed the Amended Complaint under penalty of perjury. See Amended Complaint at 55. In his Amended Complaint, Soanes included claims against other individuals, but the Court has dismissed all claims against Defendants Thompson, Davis, Dixon, Williams, Doe, Bennet, Lane, and Allen. See Order of Partial Dismissal Without Prejudice (Doc. 16).

incoming scanned routine mail, without notice, and also censored his outgoing emails providing him only with vague and broad censorship notices. See generally id.

Before the Court is Defendants' Motion to Dismiss Amended Complaint (Doc. 23; Motion) with exhibits (Docs. 23-1 to 23-11). Soanes filed a Response in opposition to the Motion (Doc. 24; Response) with exhibits (Docs. 24-1 to 24-4). With the Court's leave, see Order (Doc. 26), Defendants filed a Reply (Doc. 27; Reply) with additional exhibits (Docs. 27-1 to 27-6). Soanes filed a "Rebuttal in Support of Plaintiff's Response to Defendants' Motion to Dismiss" (Doc. 28; Rebuttal).[2] The Motion is ripe for review.

## II.    Amended Complaint[3]

According to Soanes, he was placed in confinement on June 23, 2020, "for organizing against prison overseers['] violence, abuse and brutality against prisoners in handcuff[s]." Amended Complaint at 15. On July 23, 2020, he was

---

[2] Although Soanes did not seek the Court's permission to file the Rebuttal, the Court will consider it.

[3] In considering the Motion, the Court must accept all factual allegations in the Amended Complaint as true, consider the allegations in the light most favorable to Soanes, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Amended Complaint, and may well differ from those that ultimately can be proved.

transferred to Florida State Prison (FSP), where the incidents giving rise to his claims are alleged to have occurred. Id.

On April 20, 2023, prison officials issued Soanes a tablet, and he "learned that all his incoming emails and scanned routine mail between 7/23/20 and 1/9/23 [we]re missing, not showing in email account, inbox or on kiosk" and his "emails which were paid for had been arbitrarily deleted without notice of any kind by" Defendant Maddox and mailroom personnel. Id. According to Soanes, Defendants Price, Goodman, and Maddox "had been intercepting and deleting all [of his] incoming email and scanned routine mail [from his JPay mail account], while [Soanes] was housed on CM-I and CM-II status, . . . thereby printing and issuing to [Soanes] only the emails and scanned routine mail they feel, or decide, prisoners (Soanes included) should have or not have, all without notice of any kind required by law." Id. Soanes contends that these Defendants' actions denied prisoners, including himself, "a service and product paid for." Id. at 16. He concludes that "[l]ots of scanned routine mail and emails being sent to [him] were not being printed and issued, thereby holding [him] semi-incommunicado without notice of any kind while on CM-I and CM-II status." Id.; see also id. at 31 ("Scores of incoming emails and scanned routine mail were deleted from [Soanes's] JPay email account, kept from showing in [his]

email inbox and account after being received by FSP Mailroom email database.").

Upon receiving his tablet, Soanes also noticed that "he was still on email restriction installed by Maddox," and all emails he had attempted to send since January 2023 "were still sitting in [the] outbox, not sent." Id. at 16. Eight days later, after several verbal and written complaints, officials lifted the restriction and his emails were finally sent out. Id. However, Soanes contends that even though his emails were being shown as "sent," the intended recipients were not receiving them because Maddox, Price, and Goodman were withholding the emails. Id.

On May 29, 2023, after sending over 40 emails between April 25, 2023 and May 29, 2023, Soanes received 11 censorship notices regarding his outgoing emails. Id. at 16-17. He asserts that Maddox, Price, and Goodman "issued censorship notices only stating as reasons" that the email advocated hatred, contained "STG [(Security Threat Group)] terminology," or referenced the KKK ("Amerikkka"), but the notices were otherwise broad and vague without any detail. Id. at 17. And on October 13, 2023, Soanes received three additional "vague and unconstitutional censorship notices" regarding emails he had sent out months earlier. Id. at 26. As of the date of the Amended

Complaint, Soanes had received approximately 31 "vague and broad" censorship notices. <u>Id.</u> at 17.

On September 7, 2023, family members advised Soanes that they had not received two poems he sent on August 22 and 26, 2023. <u>Id.</u> at 24. Soanes checked his "sent box" and discovered "that despite his log showing that those two poems . . . were sent," Maddox, Price, and Goodman had deleted the emails without any notice even though he was charged digital postage fees for them. <u>Id.</u> Likewise, on September 11, 2023, Soanes realized that Maddox, Price and/or Goodman deleted his email sent the day before without notice even though he was charged for it. <u>Id.</u> He lists an additional nine emails that were deleted without notice between July 17, 2023, and September 11, 2023, but contends that after submitting an informal grievance on October 5, 2023, which was never returned to him, five of those emails reappeared in his sent box. <u>Id.</u> at 25. Then on October 12, 2023, another one of those emails "was placed back in [his] 'sent box' and allowed to be released by family." <u>Id.</u> at 26.

As a result of these actions, Soanes contends Defendants violated his First and Fourteenth Amendment rights when they (1) deleted his incoming emails and scanned routine mail without notice between July 23, 2020, and January 9, 2023; (2) withheld his outgoing mail between January 2023 and April 2023; (3) censored his outgoing emails and provided vague censorship

notices between April 25, 2023 and May 29, 2023, and on October 13, 2023; and (4) deleted his outgoing emails without notice between July 17, 2023, and September 11, 2023.[4] See id. at 15-17, 24-26. Soanes requests monetary damages and injunctive relief. See id. at 36-40.

### III.    Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp.

---

[4] The parties separate and describe Soanes's allegations in these four counts. See generally Motion; Response. The Court notes that the fourth count is referred to as "Ground Five" in Soanes's Amended Complaint and referred to as Count Five in the parties' filings. See Amended Complaint at 24; Motion at 14; Response at 12. Thus, for ease of reference and consistency, the Court will refer to the counts in the same manner as the parties.

v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 679. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

## IV.    Discussion

In the Motion, Defendants contend that Soanes failed to exhaust his administrative remedies prior to filing this case. <u>See</u> Motion at 2-24. Alternatively, Defendants argue they are entitled to qualified immunity. <u>See</u> <u>id.</u> at 24-29. Each argument is addressed in turn.

### a. Exhaustion

#### i.  <u>Prison Litigation Reform Act (PLRA) Requirements</u>

The Eleventh Circuit Court of Appeals has held the exhaustion of administrative remedies by a prisoner is "a threshold matter" to be addressed before considering the merits of a case. <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1286 (11th Cir. 2004); <u>see also</u> <u>Myles v. Miami-Dade Cnty. Corr. & Rehab. Dep't</u>, 476 F. App'x 364, 366 (11th Cir. 2012)[5] (noting that exhaustion is "a 'threshold matter' that we address before considering the merits of the case") (citation omitted). It is well settled that the PLRA requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. <u>See</u> 42 U.S.C. §

---

[5] The Court does not rely on unpublished opinions as binding precedent; however, when cited in this Order it is because the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060-61 (11th Cir. 2022); <u>see</u> <u>generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

1997e(a); <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002). A prisoner, however, is not required to plead exhaustion. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" <u>Id.</u> Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. <u>Bryant v. Rich</u>, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, the PLRA "requires proper exhaustion." <u>Woodford v. Ngo</u>, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so <u>properly</u> (so that the agency addresses the issues on the merits)." <u>Pozo</u>,[6] 286 F.3d, at 1024 (emphasis in original).

<u>Woodford</u>, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." <u>Id.</u>

The United States Supreme Court has instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's

---

[6] <u>Pozo v. McCaughtry</u>, 286 F.3d 1022 (7th Cir. 2002).

exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Ross v. Blake, 578 U.S. 632, 648 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1322-23 (11th Cir. 2007)). In Ross, the Supreme Court identified three circumstances in which an administrative remedy would be considered "not available." Ross, 578 U.S. at 643-44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 643. Next, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, a remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

Because failure to exhaust administrative remedies is an affirmative defense, a defendant bears "the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." Turner, 541 F.3d at 1082.

In accordance with Eleventh Circuit precedent, a court must employ a two-step process when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081. In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015). At step two of the procedure established in Turner, the Court can consider facts outside the pleadings as long as those facts do not decide the case and the parties have had sufficient opportunity to develop the record.[7] Bryant, 530 F.3d

---

[7] In an unpublished decision, the Eleventh Circuit suggests that a pro se plaintiff must receive notice of his opportunity to develop the record on exhaustion. See Kinard v. Fla. Dep't of Corr., No. 24-10359, 2024 WL 4785003, at *7 (11th Cir. Nov. 14, 2024) (per curiam). Here, the Court notified Soanes that he had forty-five days to respond to any motion to dismiss. See Order (Doc. 17) at 3. Soanes responded to Defendants'

at 1376; see also Jenkins v. Sloan, 826 F. App'x 833, 838-39 (11th Cir. 2020). In evaluating whether a plaintiff has satisfied the exhaustion requirement, the Court notes that the Eleventh Circuit has determined that a "prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010).

### ii.  Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. See Fla. Admin. Code R. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance at the institutional level to a designated staff member responsible for the specific problem. See Fla. Admin. Code R. 33-

---

Motion (Doc. 24) and filed a Rebuttal to their Reply (Doc. 28). In his Response and Rebuttal, Soanes substantively addresses Defendants' exhaustion argument, and he filed several exhibits in support of his position, including his Declaration (Doc. 24-1) and a copy of his personal grievance log (Doc. 24-2). Soanes does not suggest that he requires additional discovery. As such, Soanes has received notice and an opportunity to develop the record on exhaustion.

103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.006. If the matter is not resolved through formal and informal grievances, the inmate must file an appeal to the Office of the FDOC Secretary. See Fla. Admin. Code R. 33-103.007. However, under certain specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.005(1); 33-103.006(3). Or an inmate can completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." See Fla. Admin. Code R. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the FDOC Secretary. See Fla. Admin. Code R. 33-103.007(3)(a).[8]

---

[8] None of the enumerated exceptions apply to Soanes's claims; thus, he was not permitted to skip the informal grievance step. See Fla. Admin. Code R. 33-103.005(1) ("Inmates may skip [the informal grievance] step and initiate the process at the formal institutional level for issues pertaining to the following: grievance of an emergency nature, grievance of reprisal, grievance alleging violations of the Americans with Disabilities Act, medical grievance, grievance involving gain time[,] . . . grievance challenging placement in close management or subsequent reviews, grievances regarding the return of incoming mail governed by subsection 33-210.101(14)[,] . . . grievances regarding disciplinary action (does not include corrective consultations)[,] . . . and grievances regarding allegations of sexual abuse . . . . Inmates may proceed directly to the Office of the Secretary on the following issues[:] . . . grievance of emergency nature, grievance of reprisal, protective management, admissible reading material, sentence structure issues (release date calculations), and inmate banking issues. Grievances alleging a violation of the Health Insurance

Florida Administrative Code Rule 33-103.011 provides time frames for the submission of grievances. Informal grievances must be received within twenty days from the date on which the grieved incident or action occurred. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the FDOC Secretary must be received within fifteen days from the date that the response to the formal grievance is returned to the inmate. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(c). According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." Fla. Admin. Code R. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." <u>See</u> Fla. Admin. Code R. 33-103.014(1)(a)-(y). A grievance can be returned without action if it: is untimely; "addresses more than one issue or complaint"; is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to"; is "not written legibly and cannot

_____

Portability and Accountability Act (HIPAA) must be filed directly with the Office of the Secretary . . . .").

be clearly understood"; is a supplement to a previously-submitted grievance that has been accepted for review; does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable"; or does not include the required attachments. <u>See</u> Fla. Admin. Code R. 33-103.014(1).

### iii.  Exhaustion Analysis

In support of their position, Defendants submit the Declaration of Alan McManus, the Bureau Chief of the Bureau of Policy Management and Inmate Appeals (Doc. 23-1); grievance logs showing the informal grievances, formal grievances, and grievance appeals Soanes filed between January 1, 2020, and May 14, 2024 (Doc. 23-2); copies of Soanes's pertinent grievances and the responses thereto (Docs. 23-3 to 23-8; 23-11); Soanes's acknowledgment of receipt of grievance orientation (Doc. 23-9); his inmate movement history (Doc. 23-10); an ICT hearing decision (Doc. 27-3); the Declaration of Jeffrey R. McClellan, an Assistant Warden of Programs at FSP (Doc. 27-5); and the Declaration of Mike Workman, a State Classification CPA (Doc. 27-6).[9]

In his Declaration, McManus explains the FDOC's grievance process and avers that between January 1, 2020, and May 14, 2024, Soanes filed 118

---

[9] To the extent Defendants re-filed exhibits already in the record (Docs. 27-1, 27-2, 27-4), the Court will cite to such exhibits where they were originally filed.

informal grievances, 56 formal grievances, and 80 grievance appeals. See Doc. 23-1 at 1-4. McManus states that he reviewed Soanes's grievance files to determine which grievances related to the claims Soanes raises in the Amended Complaint, and he summarizes each one. See id. at 4-15.

In response, Soanes argues that he did exhaust his administrative remedies. See generally Response. He asserts that to the extent Defendants contend that he did not properly follow the grievance process with respect to certain claims, such administrative remedies were unavailable to him because his grievances were thrown away and/or the prison is consistently unwilling to provide any relief through the grievance process. See generally id. To support his position, Soanes submits his own Declaration (Doc. 24-1), which mirrors the "Statement of Fact" section of his Amended Complaint; a copy of his personal log of submitted grievances (Doc. 24-2); a dismissal order from an unrelated case (Doc. 24-3); and rough drafts of "deleted emails" he sent on August 22 and 26, 2023 (Doc. 24-4).

The Court will analyze Soanes's exhaustion efforts as to each of his claims separately.

Count One: Defendants Deleted Soanes's Incoming Emails and Scanned Routine Mail Without Notice from July 23, 2020 to January 9, 2023

The parties identify the following four sets of grievances as relevant to Soanes's first claim. <u>See</u> Motion at 3-9; Response at 3-5, 21-22; Amended Complaint at 43-44.

On August 21, 2021, Soanes authored an informal grievance (#205-2108-0896) regarding "photos sent via JPay mail not being delivered." Doc. 23-3 at 5. He advised that on August 13, 2021, his wife told him that she sent two pictures via JPay mail, but Soanes had not yet received them. <u>Id.</u> He requested that his wife be refunded because her photos were not allowed. <u>Id.</u> On August 25, 2021, the institution "returned without processing" Soanes's informal grievance because "the act of asking questions or seeking information, guidance or assistance is not considered to be a grievance." <u>Id.</u>

Upon receipt of that response, Soanes filed a formal grievance (#2108-205-290) repeating the same allegations as the informal grievance (#205-2108-0896) and arguing that the response to his informal grievance was inadequate, because he did not ask any questions or seek information. <u>Id.</u> at 4. The warden denied Soanes's formal grievance stating: "A review of your JPay account was conducted[. A]lthough your wife stated she attached photos in the email she failed to actually attach the photos." <u>Id.</u> at 3.

Soanes then appealed (#21-6-26808), contending that the warden was lying and stating that he "will never take the word of such evil people as you over my wife." Id. at 2. The Secretary's office denied the appeal, stating that "[t]he response that [Soanes] received at the formal level has been reviewed and is found to appropriately address [his] concerns." Id. at 1.

Soanes began another round of grievances on January 6, 2022, when he submitted an informal grievance (#205-2201-0242) regarding "ongoing and blatant and rampant withholding and delaying of incoming mail." Doc. 23-4 at 5. He stated that a family member advised him on January 3, 2022, that she sent him an email, Kwanza card, and photo on December 29, 2021, but Soanes had not yet received them. Id. He requested that the mail room adhere to the rules and policies which require that all incoming and outgoing mail be processed within 48 hours. Id. The institution denied Soanes's grievance, noting that "routine mail is processed as received," and all of his JPay emails were printed and forwarded to him with the exception of one that was sent to security on December 31, 2024. Id.

Soanes filed a formal grievance (#2201-205-110) on January 13, 2022, stating that he still had not received any of his mail, and complaining that he did not receive notice that a piece of his mail had been sent to security. Id. at 4. The warden denied this formal grievance, because the response he received

to his informal grievance was deemed to adequately address the issue. Id. at 3. Subsequently, the Secretary's office denied Soanes's appeal (#22-6-04281) and advised him that the response he received at the institutional level appropriately addressed the issue he raised. Id. at 1.

On August 22, 2022, Soanes authored an informal grievance (#205-2208-0604) complaining that his "incoming J-Mail letters and photos [are] not being printed out and delivered." Doc. 23-5 at 5. He stated that on August 16, 2022, his fiancé advised him that she had mailed two letters and two photos, but he only received one letter. Id. He requested that his "fiancé receive the JPay service that she paid for;" the letter and photo from his fiancé be printed and forwarded to him; and that the FSP mail room adhere to the rules and regulations. Id. The institution denied Soanes's grievance, stating that "those pictures were printed on 8/15/22 [and] forwarded to you." Id.

Soanes initiated a formal grievance (#2208-205-219) stating that "there is no way FSP mail room processed and printed [the one email] out and delivered it to [him] on the very same day (8/15/22)" and regardless, the fixed wing video camera will show that he did not receive any mail on that date. Id. at 4. The warden denied his grievance, advising him that the response he received to his informal grievance adequately addressed his concerns. Id. at 3. Soanes appealed (#22-6-27139), and the Secretary's office denied the appeal,

advising him that the response to his formal grievance appropriately addressed his concerns. Id. at 1.

On July 17, 2023, Soanes submitted another informal grievance (#205-2307-0412) regarding "the fact that the [specified] emails [we]re not showing up on [his] tablet inbox." Doc. 23-11 at 13. He advised that "many of [his] emails [we]re showing on printout but not on [his] email inbox on the tablet," and he listed 30 emails and facility support letters dating from July 13, 2021 to December 12, 2022, that were missing from his inbox. Id. at 13-14. He requested the specified "emails (and any others) to show in the inbox on [his] tablet." Id. at 14. The institution denied Soanes's informal grievance, stating: "When reviewing your account, I can only see back to 1/19/23. If you were CM1 or 2 [at] those times, they won't show up on your tablet." Id. at 13.

Soanes filed a formal grievance (#2307-205-154) reiterating the same complaints. Id. at 10-11. He added that the institution's response was inadequate as it "fails to address the fact that these emails are in the JPay System being withheld by the institution and should be on the kiosk and Tablet inbox." Id. at 11. He further stated that the institution only provides the inmates on CM 1 and 2 the mail the institution "wants to print out and issue to prisoners." Id. The warden denied the formal grievance, advising Soanes that the response he received from the institution adequately addressed his

issue, and that if he has issues with his tablet, he "can place a trouble ticket using [his] tablet." Id. at 9.

Soanes submitted an appeal (#23-6-24236) raising the same arguments and requesting the same remedies as he did in his informal and formal grievances. Id. at 8. The Secretary's office denied the appeal, finding that the response Soanes received at the institutional level appropriately addressed the issue he raised. Id. at 7.

At the first step of the Turner analysis, taking Soanes's allegations as true, the Court finds that dismissal is not warranted, and thus, the Court proceeds to the second step. The parties agree that the above-listed four sets of grievances are the relevant grievances with respect to Count One. The parties dispute whether the substance of those grievances exhausted Soanes's first claim, namely that Defendants deleted his incoming emails and scanned routine mail without notice from July 23, 2020 to January 9, 2023.

Upon review, the Court agrees with Defendants that none of these grievances would have placed the prison on notice that Soanes believed Defendants or FSP staff were deleting all of his incoming emails and scanned routine mail without providing him notice. See Whatley, 802 F.3d at 1214-15 ("The purpose of the PLRA's exhaustion requirement is to 'afford corrections officials time and opportunity to address complaints internally before allowing

the initiation of a federal case.'" (quoting Woodford, 548 U.S. at 93)). Soanes argues that he did not know Defendants were "deleting" his emails until he received the response to his July 17, 2023 informal grievance (#205-2307-0412). Response at 4, 21. But even taking that assertion as true, Soanes did not then submit any grievances relating to his allegations of "deletion" after he became aware of that fact. Nor did he advise the institution or the Secretary's office in his formal grievance or grievance appeal of the July 17, 2023 informal grievance that Defendants were allegedly deleting all of his incoming mail without notice as he alleges in the Amended Complaint.

Soanes also argues that the grievance process is unavailable because "[D]efendants and their administration ha[ve] a culture and practice of doing all in their arbitrary power to discourage and hinder prisoners' access to the court, by officers unable or consistently unwilling to provide any relief to aggrieved prisoners" through the grievance process. Response at 22. Just because Soanes did not get the responses he desired does not mean that the grievance process was unavailable to him. And to the extent that the institution improperly returned without action his August 21, 2021 informal grievance (#205-2108-0896), the warden and Secretary's office both denied Soanes's subsequent formal grievance and grievance appeal, respectively, on

the same issues. Thus, Soanes suffered no prejudice from the institution's alleged improper response.

Defendants have shown, through reference to the exhibits attached to their Motion and Reply, that the grievance process was available to Soanes during the relevant timeframes. Thus, the burden shifts to Soanes to show the process was unavailable to him. See Geter v. Baldwin State Prison, 974 F.3d 1348, 1356 (11th Cir. 2020) (recognizing that once the defendant meets his burden, the burden shifts to the plaintiff, "who, pursuant to Turner, must demonstrate that the grievance procedure was 'subjectively' and 'objectively' unavailable to him" (quoting Turner, 541 F.3d at 1085)). He has not done so. Soanes proceeded through the three-step grievance process multiple times, but his grievances simply did not allege the same issue as he raises in Count One. Thus, the Court finds that Soanes failed to exhaust his administrative remedies as to Count One.[10]

---

[10] The Court also finds that to the extent Soanes asserts in the Amended Complaint that he received printed incoming emails and scanned mail during the relevant time but those items did not appear in his inbox on his tablet, he fails to state a claim of constitutional dimension. There is no constitutional requirement that inmates receive the same piece of incoming mail in multiple forms, i.e., printed and via electronic means.

Count Two: Defendants Withheld Soanes's Outgoing Mail Beyond the 72-Hour Processing Time From January 2023 to April 2023, and on July 17, 2023

The parties identify the following grievances as relevant to Soanes's second claim. See Motion at 9-11; Response at 6-7, 18-20; Amended Complaint at 44-45.

On February 7, 2023, Soanes authored a formal grievance (#2302-205-063) stating that he submitted an informal grievance on January 12, 2023, but had not yet received a response so he was proceeding to the formal grievance step. Doc. 23-6 at 2. He alleged that on January 9, 2023, he received a tablet but was unable to access emails between July 23, 2020 and the present. Id. He requested that officials unblock his ability to send emails and stop withholding his incoming mail without issuing notice to him and/or the sender. Id. The warden returned without action this formal grievance, because Soanes did not first submit an informal grievance or otherwise show an acceptable reason for not following the rules. Id. at 1. "Soanes took no further action" with respect to this formal grievance. Doc. 23-1 at 9.

On May 23, 2023, Soanes filed another formal grievance (#2305-205-159) in which he stated that he submitted an informal grievance on May 9, 2023, but he had not received a timely response so he was proceeding to the next level of the grievance process. Doc. 23-6 at 6. He alleged a "blatant and

24

rampant withholding of incoming and outgoing emails, disparity in treatment, discrimination, violation of equal production [sic]" and "retaliation for writing grievances and being a Prisoners['] Rights Activist." Id. He stated that between April 25, 2023, and May 5, 2023, he sent out 15 emails to family and friends, but none of his family or friends had received the emails, and on May 5, 2023, his sister sent him two emails that he had yet to receive.  Id.

The warden returned this formal grievance without action for failure to first file an informal grievance. Id. at 5 ("A review of the log does not reflect an informal grievance was received from you concerning this issue."). Soanes filed a grievance appeal (#23-6-18332) arguing that the formal grievance response was insufficient because it failed to recognize or address that he advised that his informal grievance was thrown in the trash. Id. at 4. The Secretary's office returned the appeal without action, "because [Soanes's] grievance at the institutional level was determined to be in non-compliance with the requirements of the rule." Id. at 3.

At the first step of Turner, taking Soanes's allegations as true, the Court finds that dismissal is not warranted because Soanes contends that he filed informal grievances on January 12, 2023, and May 9, 2023, that were never returned to him. See Response at 6-7. Thus, he argues that the informal grievance step of the process was unavailable to him, and the warden and

Secretary's office failed to consider his explanation for "by-passing" the informal grievance step. <u>See</u> <u>id.</u> at 18-20. Therefore, the Court turns to the second step of the <u>Turner</u> analysis.

Considering the record and the evidence submitted by the parties, the Court finds that Defendants have met their burden of showing Soanes failed to exhaust his administrative remedies with respect to his allegations in Count Two. Specifically, Defendants have shown, through McManus's and McClellan's declarations and relevant exhibits, that the FDOC offers an administrative grievance procedure in which Soanes actively participated, but he failed to properly do so for the issue he raises in Count Two. Insofar as Soanes argues that the informal grievance stage was unavailable to him because he submitted grievances that were thrown away, he fails to carry his burden. <u>See</u> <u>Geter</u>, 974 F.3d at 1356. Soanes relies on his own personal grievance log and his verified statements to contend that he filed informal grievances that were thrown in the trash. <u>See</u> Doc. 24-2. Notably, however, while the January 12, 2023 informal grievance appears on Soanes's personal log, the alleged May 9, 2023 informal grievance does not. <u>See</u> <u>id.</u> at 2, 4, 6, 8; <u>see also</u> Rebuttal at 4 (acknowledging that Soanes's "personal grievance log may not be complete or fit FDOC standard of record keeping, but it is accurate as can be"). Thus, given the inaccuracy of Soanes's personal log, the Court finds

it is not credible evidence showing that he actually submitted these informal grievances. Additionally, Soanes's conclusory assertion that his informal grievances were thrown away is insufficient to establish that the informal grievance process was unavailable to him in light of his grievance-filing history. Indeed, the record shows that Soanes not only had knowledge of the grievance process, but that he was proficient in using it. See Whatley v. Smith, 898 F.3d 1072, 1083 (11th Cir. 2018) (noting that the district court "appropriately considered [the prisoner's] history of filing grievances as evidence that the defendants did not make administrative remedies unavailable to him or lose or destroy his grievances"). As such, the Court finds that Defendants' Motion is due to be granted to the extent it seeks dismissal of Count Two for Soanes's failure to exhaust.

> Count Three: Defendants Censored Soanes's Outgoing Emails Between April 25, 2023 and May 29, 2023, and on October 13, 2023, and Provided him with Vague Censorship Notices

The parties identify the following grievances as relevant to Soanes's third claim. See Motion at 11-14; Response at 7-12, 19-20; Amended Complaint at 45-46.

Soanes contends that he submitted an informal grievance on June 1, 2023, that was "never returned." Amended Complaint at 45. According to Soanes, this grievance was regarding "unconstitutional censorship and

withholding of [his] outgoing email correspondence simply to eliminate unflattering or unwelcomed opinions or factually inaccurate statements, unjustified government interference in violation of First [and] Fourteenth Amendment right[s], in blatant and rampant retaliation for writing grievances and being a Prisoners['] Rights Activist. Censorship notice vague and broad, [he is] being singled-out, discriminated against." Id. Soanes asserts that upon expiration of the time frame in which the institution had to respond to this grievance, Soanes submitted a formal grievance (#2306-205-173) to the warden. Id. at 45-46; Doc. 23-2 at 9. The warden returned the formal grievance without action. See Amended Complaint at 45-46; Doc. 23-2 at 9.

Upon receipt of the response to his formal grievance (#2306-205-173), Soanes submitted another informal grievance. See Doc. 23-7 at 1. On June 27, 2023, the institution received Soanes's informal grievance (#205-2306-0778) regarding the "unconstitutional censorship and withholding of [his] outgoing email correspondence." Doc. 23-7 at 1. He indicated on the form that he "originally submitted" this grievance on June 1, 2023. Id. He stated that on May 30, 2023, he received censorship notices regarding eleven of his outgoing emails, but the notices were unconstitutionally vague. Id. He requested, inter alia, that "all retaliatory censorship and withholding of [his] incoming and outgoing emails be stopped," and an "end" to the "vague censorship." Id. at 2.

28

The institution approved the grievance, noting that Soanes's "allegations have been documented and reported." Id. at 1.[11]

On July 28, 2023, Soanes submitted an informal grievance (#205-2307-0683) regarding the institution's failure to follow through on his approved grievance (#205-2306-0778). Doc. 23-7 at 11-12. The institution returned the grievance without action because Soanes addressed more than one issue or complaint. Id. at 11. Dissatisfied with that response, Soanes submitted a formal grievance (#2308-205-086), repeating the same allegations as he did in the informal grievance, and adding that the institution's response failed to address the issue he raised regarding his approved grievance. Id. at 9-10. The warden "returned without action" the formal grievance due to Soanes's failure to properly comply with the grievance process. Id. at 8 ("You have not attached a copy of an informal grievance as required by Chapter 33-103. You attached a returned informal grievance that does not meet the requirements of Chapter 33-103.006." (capitalization omitted)). Soanes submitted a grievance appeal (#23-6-26973), which was similarly returned without action due to his non-compliance with the grievance process. Id. at 5-7.

---

[11] Defendants do not discuss this grievance because they "admit[] that [Soanes] has exhausted that informal grievance, in that on May 30, 2023, [Soanes] received 11 notices of censorship that were vague." Motion at 11 n.2.

On October 19, 2023, Soanes authored an informal grievance (#205-2310-0568) complaining that on October 5, 2023, he received a notice of censorship of incoming mail/emails, but the notice failed to provide sufficient information, thus it was unconstitutionally vague. Doc. 23-7 at 15. He requested that the "censorship notice be made in accordance" with the First Amendment and Florida Administrative Code, "and that unconstitutionally censored mail/email be reversed and allowed to be received." Id. The institution "returned without action" the grievance, citing as the reason for the return that "the inmate is using the grievance process to ask questions or seek information, guidance or assistance." Id.

Upon receiving that response, Soanes filed a formal grievance (#2310-205-199), repeating the same allegations and arguing that his informal grievance was improperly returned "as means of abusing pseudo authority in avoidance of addressing issue of unconstitutional and vague censorship notice." Id. at 14. The warden returned the formal grievance without action, stating: "This grievance is being returned without further processing in that you have not attached a copy of an informal grievance as required by Chapter 33-103. You attached a returned informal grievance that does not meet the requirements of Chapter 33-103.006." Id. at 13 (capitalization omitted). Although Soanes argues that he submitted an appeal that was "never

returned," Response at 12, there is no record of Soanes filing an appeal of this formal grievance.

The Court finds, at the first step of <u>Turner</u>, that dismissal is not warranted, and at the second step, concludes that Soanes properly exhausted this claim. The institution "approved" Soanes's June 27, 2023 informal grievance (#205-2306-0778), in which he complained about the "unconstitutional censorship and withholding of [his] outgoing email correspondence," and the eleven vague censorship notices that he received on May 20, 2023. Doc. 23-7 at 1. Although Soanes received additional censorship notices after this grievance was approved, "[n]othing in the FDOC's grievance procedures requires inmates to file new grievances addressing every subsequent act by a prison official that contributes to the continuation of a problem already raised in an earlier grievance." <u>Parzyck</u>, 627 F.3d at 1219. Soanes's approved informal grievance (#205-2306-0778) properly exhausted his claim regarding the alleged unconstitutional censorship of his outgoing emails between April 25, 2023, and May 29, 2023, and on October 13, 2023. Thus, Defendants' Motion is due to be denied to the extent it seeks dismissal of Count Three for failure to exhaust.[12]

---

[12] Defendants seem to recognize that their exhaustion argument with respect to Count Three is not persuasive. <u>See</u> Reply at 10 (seeking dismissal of Counts One,

Count Five: Defendants Deleted Soanes's Outgoing Emails Without Notice Between July 17, 2023 and September 11, 2023

The parties identify the following grievance as relevant to Soanes's fourth claim. See Motion at 14-15; Response at 12-13, 21-22; Amended Complaint at 48.

On September 11, 2023, Soanes authored an informal grievance (#205-2309-0253) regarding the "blatant and rampant violation of Rule 33-210.101," and the "deleting of [his] outgoing emails (poems) for which [he is] being charged and without notice." Doc. 23-8 at 1. He requested that the mailroom and Defendant Maddox stop retaliating against him by "deleting [his] outgoing emails." Id. The institution denied this grievance, noting that Soanes's emails were censored in accordance with the rules governing kiosks and tablets. Id. (citing Fla. Admin. Code R. 33-602.900, which permits the censoring of an incoming or outgoing eCommunication if "any part of it . . . depicts, describes, or encourages activities that may lead to the use of physical violence or group disruption" and/or "is dangerously inflammatory in that it advocates or encourages riot, insurrection, disruption of the institution or violation of Department or institution rules"). The FDOC's records reflect that Soanes did

_____

Two, and Five for failure to exhaust, and dismissal based on qualified immunity for Count Three).

not take any further action after receiving this response. See Doc. 23-1 at 15. But in his Amended Complaint, Soanes states that he filed a formal grievance on September 18, 2023, that was never returned. See Amended Complaint at 48. He appears to acknowledge in his Amended Complaint that he did not file a grievance appeal. See id. Confusingly, he asserts in his Response that he "proceeded to step II and III, but his grievances were never returned." Response at 13; see id. at 20 ("[Soanes] did in fact submit[] formal grievance and appeal regarding issue raised in informal grievance no. 205-2309-0253, those formal grievances did not return.").

At the first step of Turner, accepting Soanes's assertions as true, the Court finds dismissal is not warranted. Thus, proceeding to the second step, the Court determines that Defendants have met their burden, through reference to McManus's Declaration and the other exhibits, that Soanes failed to exhaust his administrative remedies as to this claim. Soanes contends that he filed a formal grievance and grievance appeal that were never returned to him, but there is no evidence to support his conclusory assertions. The FDOC's grievance logs and Soanes's grievances in the record clearly show that Soanes knew how to use the grievance process, was well aware of its requirements, and was a well-documented user of the system. Here it appears Soanes simply failed to properly comply with the grievance procedure with respect to this

claim. Therefore, Defendants' Motion is due to be granted with respect to the argument that Soanes failed to exhaust his claim raised in Count Five.

### b. Qualified Immunity[13]

Defendants alternatively argue that they are entitled to qualified immunity on Soanes's claims. See Motion at 24-29. Because the Court finds that Soanes only properly exhausted Count Three, the Court will address Defendants' qualified immunity argument with respect to that Count only.

"Qualified immunity protects from civil liability government officials who perform discretionary functions if the conduct of the officials does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Nolin v. Isbell, 207 F.3d 1253, 1255 (11th Cir. 2000) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). As a result, the qualified immunity defense protects from suit "all but the plainly

---

[13] While Soanes states in the Amended Complaint that he sues each Defendant in his or her individual and official capacity, he fails to allege any facts to support an official-capacity claim against any Defendant. Indeed, he does not allege that a custom, policy, or practice was the "moving force" behind any alleged constitutional violation. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 693-94 (1978) (concluding that municipal liability under § 1983 occurs "when execution of a government's policy or custom" is "the moving force" behind the constitutional violation). To the contrary, he argues that Defendants violated prison policy and acted on their "own personal inculcated prejudice, sentiments, opinions and interests" when "screening and reviewing" Soanes's incoming emails and scanned routine mail. Response at 26. Thus, any official-capacity claims are due to be dismissed. See 28 U.S.C. § 1915(e)(2)(B)(ii).

incompetent or those who knowingly violate the law." <u>Carr v. Tatangelo</u>, 338 F.3d 1259, 1266 (11th Cir. 2003) (internal quotations and citation omitted). Indeed, as "'[g]overnment officials are not required to err on the side of caution,' qualified immunity is appropriate in close cases where a reasonable officer could have believed that his actions were lawful." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1200 (11th Cir. 2002) (quoting <u>Marsh v. Butler Cnty., Ala.</u>, 268 F.3d 1014, 1031 n.8 (11th Cir. 2001)).

"To invoke qualified immunity, a public official must first demonstrate that he was acting within the scope of his or her discretionary authority." <u>Jones v. Fransen</u>, 857 F.3d 843, 851 (11th Cir. 2017). "The term 'discretionary authority' covers 'all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority.'" <u>Hinson v. Bias</u>, 927 F.3d 1103, 1116 (11th Cir. 2019) (quoting <u>Jordan v. Doe</u>, 38 F.3d 1559, 1566 (11th Cir. 1994)). If the official does so, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate using the two-prong test established by the Supreme Court in <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). In accordance with <u>Saucier</u>, the Court must ask whether the facts viewed in the light most favorable to the plaintiff "show the officer's conduct violated a constitutional right[.]" <u>Id.</u>; <u>see also</u> <u>Hope v. Pelzer</u>, 536 U.S. 730, 736 (2002); <u>Beshers v. Harrison</u>, 495 F.3d

1260, 1265 (11th Cir. 2007) (quoting Scott v. Harris, 550 U.S. 372, 377 (2007)). The court must also ask whether the right allegedly violated was clearly established at the time of the violation. Hope, 536 U.S. at 739; Saucier, 533 U.S. at 201; Scott, 550 U.S. at 377; Underwood v. City of Bessemer, 11 F.4th 1317, 1328 (11th Cir. 2021) ("[W]e ask two questions: (1) whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right, and (2) if so, whether the right at issue was clearly established at the time of the defendant's alleged misconduct.") (internal quotations omitted). The Court may consider these questions in whichever order it chooses, and qualified immunity will protect the defendant if the answer to either question is "no." Pearson v. Callahan, 555 U.S. 223, 232, 236 (2009); Underwood, 11 F.4th at 1328. Notably, "[b]ecause § 1983 'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation,' each defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions." Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018) (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)).

In Count Three, Soanes asserts that Defendants censored his outgoing emails and provided him with vague censorship notices between April 25, 2023,

and May 29, 2023, and on October 13, 2023.[14] While he labels his request for relief as "monetary, declaratory, and injunctive relief," he fails to request any declaratory relief. Amended Complaint at 37. Instead, he seeks either injunctive relief or monetary damages. See id. Indeed, he requests either an order that directs all STG and mailroom personnel, including but not limited to Defendants, to (1) "[a]llow an independent and objective audit of FSP main prisoner email database for the list of all outgoing emails censored by" Defendants; (2) "[e]nd all unconstitutional censorship, based on desire to eliminate unwelcoming, or unflattering, or dissenting, or unfavorable statements, speech, or opinions;" (3) "[e]nd all unjustified government interference of outgoing emails;" (4) modify the censorship notice requirements; and (5) require that "all unconstitutionally censored outgoing emails . . . be replaced" in Soanes's email account; or award him $10,000 "for destruction of work for publication in each outgoing email unconstitutionally censored." Id. at 37-38.

---

[14] Although Soanes states that Defendants violated his First and Fourteenth Amendment rights, his allegations in Count Three align with a procedural due process claim under the Fourteenth Amendment only. He does not challenge a prison policy as violative of the First Amendment. And his allegations of "retaliation" are entirely conclusory. Thus, to the extent Soanes attempts to raise any First Amendment claim, such claim is due to be dismissed without prejudice. See 28 U.S.C. § 1915(e)(2)(B)(ii).

Soanes's allegations make clear that Defendants were carrying out their discretionary tasks while reviewing and censoring Soanes's outgoing emails. Indeed, Soanes recognizes that part of Defendants' job is "to screen prisoners['] incoming and outgoing emails and scanned routine mail." Response at 25-26. He simply disagrees with how Defendants performed their jobs, but Soanes's disagreement does not change the fact that Defendants were exercising their discretionary authority. See Benning v. Comm'r, Georgia Dep't of Corr., 71 F.4th 1324, 1333 (11th Cir. 2023), cert. denied, 144 S. Ct. 1457 (2024) (recognizing that prison staff "were carrying out discretionary tasks" when "intercepting and withholding [the inmate's] three emails"). Thus, because Defendants were acting within their discretionary authority, the burden shifts to Soanes to show that Defendants violated a clearly established constitutional right.

Courts "examine procedural due process questions in two steps." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (citations omitted). First, the court "asks whether there exists a liberty or property interest which has been interfered with by the [s]tate[;]" and second, the court "examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Id. Notably, on June 23, 2023, the Eleventh Circuit, as a matter of first impression, found that inmates have a protected

liberty interest in their outgoing emails. See Benning, 71 F.4th at 1329-31 (concluding that a Georgia inmate had a liberty interest in his outgoing emails that triggered due process protections). Thus, for any conduct prior to the June 2023 Benning decision, Soanes's liberty interest in his outgoing emails was not "clearly established." See id. at 1334 ("[A]t the time [the defendants] acted [in September and October 2017,] there was no governing and materially similar precedent concerning the due process implications of confiscating, intercepting, or censoring outgoing emails generated by inmates).

Moreover, Soanes fails to allege that the notices he received violated the Due Process Clause. He contends that the eleven notices he received from emails he sent between April 25, 2023, and May 29, 2023, were "broad and vague" and failed to list the names of the sender and intended recipient, the date, or the specific statute or rule violated; provide an example of the violative speech; give notice whether the intended recipient was notified; or indicate the name of the person conducting or authorizing the censorship. Amended Complaint at 17. As to the notices he subsequently received, Soanes states: "On 10/13/23, [Soanes] received three (3) more vague and unconstitutional censorship notices of emails which had been sent out months prior, unconstitutionally censored by [Defendants] via practice of using vague and unconstitutional censorship notice is ongoing." Id. at 26. While Soanes may

desire a more detailed censorship notice, he is not constitutionally entitled to one.[15] See Peterka v. Dixon, No. 4:21CV367-WS-MAF, 2024 WL 4251914, at *7 (N.D. Fla. Aug. 20, 2024), report and recommendation adopted, 2024 WL 4347873 (Sept. 30, 2024) ("There is no requirement that notice be elaborate, explanatory, or elucidative.").[16] Due process simply requires "that the inmate be 'notified of the rejection of [the] letter written by . . . him,' and that he be 'given a reasonable opportunity to protest that decision,' with his complaint being 'referred to a prison official other than the person who originally disapproved the correspondence.'" Benning, 71 F.4th at 1332 (quoting Procunier v. Martinez, 416 U.S. 396, 418-19 (1974)). According to Soanes's own allegations, he received notice of the censored emails, he was able to file grievances regarding his complaints of vague and unconstitutional censorship, and those grievances were decided by staff other than Defendants. Thus,

---

[15] Additionally, insofar as Soanes alleges that Defendants' censorship notices violated prison policy, such an allegation does not amount to a constitutional violation. See Sandin v. Conner, 515 U.S. 472, 481-82 (1995) (recognizing that prison regulations are "not designed to confer rights on inmates"); see also Taylor v. Adams, 221 F.3d 1254, 1259 (11th Cir. 2000) ("[F]ailure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence.").

[16] Although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

Soanes fails to allege a due process violation with respect to the "vague and unconstitutional" censorship notices he received,[17] and Defendants are entitled to qualified immunity on this claim.

Accordingly, it is

**ORDERED**:

1. Defendants' Motion to Dismiss Amended Complaint (Doc. 23) is **GRANTED to the extent** that Counts One, Two, and Five are **DISMISSED without prejudice** for Soanes's failure to exhaust his administrative remedies, and Count Three is **DISMISSED with prejudice** based on qualified immunity.

2. To the extent Soanes attempted to raise a claim under the First Amendment in Count Three or any official-capacity claims, such claims are **DISMISSED without prejudice** for failure to state a claim.

---

[17] Qualified immunity does not apply to requests for injunctive or declaratory relief. See Benning, 71 F.4th at 1335 ("[Q]ualified immunity is only a defense to personal liability for monetary awards resulting from government officials performing discretionary functions, and may not be effectively asserted as a defense to a claim for declaratory or injunctive relief." (internal quotations and citation omitted)). However, because the Court finds that Soanes fails to state a due process claim, the Court finds it appropriate to also dismiss Soanes's requests for injunctive relief.

3.    The **Clerk** shall enter judgment accordingly, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of February, 2025.


**MARCIA MORALES HOWARD**
United States District Judge


JAX-3 2/18
c:
Keith Soanes, #191981
Counsel of Record